## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DK TRADING & SUPPLY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:24-CV-0558-K |
| | § | |
| JA DAKIS CAPITAL, LLC d/b/a | § | |
| GLOBAL OIL BUNKERING | § | |
| and PETROS KALAMARAS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff DK Trading & Supply, LLC's ("DK Trading") Motion for Default Judgment Against Defendants JA Dakis Capital, LLC d/b/a Global Oil Bunkering ("JA Dakis") and Petros Kalamaras ("Mr. Kalamaras")(the "Motion"). Doc No. 16. The Court has carefully considered the Motion, the relevant record, and the applicable law. The Court **GRANTS** the Motion and awards DK Trading default judgment against JA Dakis Capital, LLC d/b/a Global Oil Bunkering and Petros Kalamaras, but **defers** entry of final judgment to permit DK Trading 21 days leave to supplement the record with evidence of its reasonable and necessary attorneys' fees and taxable costs.

## I.    BACKGROUND

Plaintiff DK Trading is a limited liability company whose sole member is Alon Refining Krotz Springs, Inc., a Delaware corporation whose principal place of business

is in Texas.  Doc. No. 10 at 1, ¶1.  Defendant JA Dakis is a limited liability company whose sole member (and President) is Defendant Mr. Kalamaras, who is a citizen of New York.  *Id.* at 1-2, ¶¶2-3.  On or about August 31, 2022, JA Dakis and Mr. Kalamaras submitted a Credit Application to finance JA Dakis's purchases of petroleum products from a refinery affiliated with DK Trading in Tyler, Texas.  Doc. No. 10 at 2, ¶5.  On or about November 1, 2022, JA Dakis began to purchase petroleum products on credit from DK Trading's affiliated refinery.  *Id.* at 2, ¶¶6-7.  Over the next two months JA Dakis purchased fuel, but made no payments, and its outstanding credit balance to DK Trading grew to $6,186,825.47.  Doc. No. 10-3 at 2-16.

On March 1, 2023, JA Dakis and Mr. Kalamaras both entered into a Payment Agreement with DK Trading to arrange a payment plan for the outstanding credit balance due.  Doc. No. 10-2 at 2.  The Payment Agreement provided for JA Dakis and Mr. Kalamaras to pay the full balance of $6,186,825.47 then due DK Trading, through scheduled weekly payments for twenty-five weeks, in exchange for DK Trading's forbearance on litigation to collect the amount due.  *Id.* at 2-3, ¶¶1-3.  The Payment Agreement also entitled DK Trading to interest of 3% on the outstanding balance during the repayment schedule.  *Id.*  Upon JA Dakis and Mr. Kalamaras's final payment under the Payment Agreement, DK Trading agreed it would release and discharge any claims asserted (or which could have been asserted) with respect to the original amount due.  *Id*. at 3, ¶3.

After entering the Payment Agreement, JA Dakis and Mr. Kalamaras kept up with their new payment schedule for about six weeks, but then made no payments after April 19, 2023. Doc. No. 10-3 at 16. Although JA Dakis and Mr. Kalamaras did pay $1,430,000.00 to DK Trading under the Payment Agreement, after reflecting these payments, JA Dakis and Mr. Kalamaras continued to owe $4,756,825.47 of principal to DK Trading. *Id*. In addition, JA Dakis and Mr. Kalamaras did not pay the interest due to DK Trading pursuant to the Payment Agreement. *Id.* An officer's affidavit indicates DK Trading noticed JA Dakis and Mr. Kalamaras on May 1, 2023, May 22, 2023, June 6, 2023, and August 25, 2023 that $4,899,530.23 principal and interest was due, and Defendants failed to pay this outstanding debt. Doc. No. 10-1 at 3, ¶3.

On March 6, 2024, DK Trading filed its Original Complaint in this Court for breach of contract and suit on sworn account. Doc. No. 1 at 3-5. The Original Complaint asserted JA Dakis and Mr. Kalamaras failed to pay the amounts agreed under the Payment Agreement, and that JA Dakis further failed to pay its account for the petroleum it had purchased and received. *Id*. Accordingly, DK Trading sought judgment against JA Dakis and Mr. Kalamaras for an award of $4,899,530.23 based on unpaid principal and agreed interest, in addition to further sums for court costs, attorney's fees, and pre and post-judgment interest. *Id*. After amending its Original Complaint to properly assert Defendants' citizenship, DK Trading's First Amended Complaint asserts diversity jurisdiction under 28 U.S.C. § 1332(a) alleging the Parties

are completely diverse and the amount in controversy exceeds $75,000.  Doc. No. 10 at 1-2, ¶¶1-4.

On March 7, 2024, the Clerk issued Summonses for DK Trading to serve upon JA Dakis and Mr. Kalamaras.  Doc. No. 7.  On March 14, 2024, DK Trading served the Summons and First Amended Complaint to JA Dakis through its registered agent. Doc. No. 12 at 1.  On April 10, 2024, DK Trading served Mr. Kalamaras by leaving the Summons and First Amended Complaint with Mr. Kalamaras' co-tenant at his usual place of abode and by mailing a true copy of the Summons and First Amended Complaint to Mr. Kalamaras at his last known residence and usual place of abode. Doc. No. 13 at 1.

Given neither Defendants answered or otherwise responded, on May 21, 2024, DK Trading requested the Clerk to enter default against both JA Dakis and Mr. Kalamaras.  Doc. No. 14.  On May 28, 2024, the Clerk entered default for both JA Dakis and Mr. Kalamaras.  Doc. No. 15.  On May 31, 2024, DK Trading filed the present Motion for Default Judgment against JA Dakis and Mr. Kalamaras.  In the months that have since passed, Defendants have failed to appear, or in any way respond, and DK Trading's Motion for Default Judgment is ripe to decide.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. *See* FED. R. CIV. P. 55(b)(2).  In the Fifth Circuit, there are three steps to securing a default judgment: (1) default by the defendant; (2) the clerk's entry

of default; and (3) the district court's entry of default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). By entering default judgment, "conduct on which liability is based may be taken as true as a consequence of the default." *Joe Hand Promotions, Inc. v. Alima*, Civ. Action No. 3:13-CV-0889-B, 2014 WL 1632158, at *1 (N.D. Tex. Apr. 22, 2014)(Boyle, J.) (quoting *Frame v. S—H Inc.*, 967 F.2d 194, 205 (5th Cir. 1992)) (quotation marks omitted). But "[a] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). In assessing the pleadings to determine whether there is sufficient basis to enter a default judgment, the court accepts well-pleaded allegations of facts in the complaint as true. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

## III.  ANALYSIS

### A. DK Trading has made a prima facie showing the Court has jurisdiction.

For the Court to enter default judgment, the plaintiff must first make a prima facie showing that the Court has "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Here, the Court finds that DK Trading has made a prima facie showing that the Court has subject matter jurisdiction based on diversity. Plaintiff DK Trading is a limited liability company whose sole member is a corporation that is a citizen of

Delaware and Texas. Doc. No. 10 at 1, ¶1. Defendant JA Dakis is a limited liability company and citizen of New York, for its sole member is Mr. Kalamaras, who is a citizen of New York. *Id.* at 1-2, ¶¶2-3. Further, DK Trading's suit seeks damages for breach of contract of nearly five million dollars, in addition to interest, fees, and costs. Doc. No. 10 at 3-4, ¶¶17, 22-24. Thus, by pleading complete diversity and an amount in controversy that exceeds $75,000, DK Trading has made the required prima facie showing that the Court has diversity jurisdiction in this action. 28 U.S.C. §1332(a).

In addition, DK Trading has made a prima facie showing that the Defendants have the minimum contacts with the forum state necessary for this Court to have specific personal jurisdiction. A court may have specific personal jurisdiction over a defendant relating to a contract dispute when it is alleged the contract's negotiation, performance, breach or anticipated consequences thereof, occurred in or relate to the forum state. *See Danziger & De Llano, L.L.P. v. Morgan Verkamp*, L.L.C., 24 F.4th 491, 500 (5th Cir. 2022). Here, DK Trading has made a prima facie showing that the Court has specific personal jurisdiction over the Defendants, who engaged in business in Texas, entered a contract to purchase petroleum from a Texas refinery, secured financing from a Texas company, and agreed in their Payment Agreement that exclusive jurisdiction and venue for any enforcement would lie in Texas. *See* Doc. No. 10 at 1-2, ¶¶2, 4-6 (pleadings assert Defendants did business in Texas and purchased petroleum in Texas); Doc. No. 3 at 2-16 (sworn statement of account shows hundreds of separate petroleum purchases on credit by Defendants from Texas refinery); Doc. No. 10-2 at

3, ¶10 (Payment Agreement establishes exclusive jurisdiction and venue for resolving disputes are state or federal courts in Dallas County, Texas). Accordingly, DK Trading has made a prima facie showing that Defendant has sufficient minimum contacts for the Court to have specific personal jurisdiction over the Defendants.

### B. DK Trading has shown the pre-requisites for default judgment were met.

A plaintiff moving for entry of a default judgment must establish as a prerequisite that: (1) the defendant was served with the summons and complaint and that default was entered for its failure to appear; (2) the defendant is neither a minor nor an incompetent person; (3) the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if the defendant has appeared, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, Civ. Action No. 3:12-CV-2092-M, 2013 WL 145502, at *2-3 (N.D. Tex. Jan. 14, 2013) (Lynn, J.) (citing FED. R. CIV. P. 55 and *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006)).

After careful review of the record, the Court finds DK Trading has established the prerequisite elements for the Court to grant a default judgment. First, the Defendants were both properly served. DK Trading's affidavit of service shows JA Dakis' registered agent was properly served with the Summons and First Amended Complaint. Doc. No. 12; FED. R. CIV. P. 4(h)(1)(B). DK Trading's affidavits of service also show Mr. Kalamaras was properly served at his dwelling or usual place of abode

7

through a co-tenant of suitable age and discretion.  Doc. No. 13; Fed. R. Civ. P. 4(e)(1), (2)(B).  The Court also notes that, though not required by the Federal Rules, following New York law, DK Trading's process server also mailed a true copy of the summons and complaint to Mr. Kalamaras at his last known residence, in addition to the personal service on Mr. Kalamaras's usual place of abode through his co-tenant.  *Id*.; *see* N.Y. C.P.L.R. 308(2) (McKinney).  The record further establishes that Mr. Kalamaras is in fact the President and sole member of JA Dakis Capital, LLC, a co-defendant properly served through its registered agent, and as such, Mr. Kalamaras had actual notice of the present suit.  Doc. No. 10 at 1-2, ¶¶2-3.  For each of these reasons, the Court finds service on both JA Dakis and Mr. Kalamaras was proper.  *See Harvest Nat. Res., Inc. v. Ramirez Carreno*, Civ. Action No. CV H-18-483, 2020 WL 3063940, at *4 (S.D. Tex. June 9, 2020) (Rule 4's "provision concerning usual place of abode should be liberally construed to effectuate service if actual notice has been received by the defendant.") (citing *Nowell v. Nowell*, 384 F.2d 951, 953 (5th Cir. 1967)).  After Defendants failed to appear and answer or otherwise respond, the Clerk properly entered default. Doc. No. 15.

The remaining prerequisites are quickly addressed.  Defendant JA Dakis is an LLC; therefore, it is neither a minor nor an incompetent person, nor can it be in military service.  *See Arch Ins. Co.*, 2013 WL 145502, at *3 (citing Fed. R. Civ. P. 55(b)(2) and 50 U.S.C. App. §§ 521(a), (b)(1)(A) - (B)).  Defendant Mr. Kalamaras is a natural person, but the record establishes he is not a minor, an incompetent person, nor

currently serving in the military.  Doc. No. 16-1 at 2, ¶5; Doc. No. 16-5 at 2; Doc. No. 13 at 1; *see also* FED. R. CIV. P. 55(b)(2); 50 U.S.C. App. §§ 521(a),(b)(1)(A)-(B). Therefore, all the procedural prerequisites to enter a default judgment have been met.

### C. DK Trading has established that a default judgment should be entered.

The Court turns now to the second step of its analysis, determining whether a default judgment should be entered.  *See Joe Hand Promotions, Inc.*, 2014 WL 1632158, at *1 (courts conduct a two-step process in deciding whether a default judgment should be entered). First, the Court must consider whether the entry of default judgment is appropriate under the circumstances.  *Id.*  Second, the Court must address the merits of Plaintiff's claims and determine if there is sufficient basis in the pleadings for the default judgment.  *Nishimatsu Constr. Co.*, 515 F.2d at 1206.

### 1.  The Court finds an entry of default judgment is appropriate under the circumstances.

In determining if default judgment against a party is appropriate, the Court considers six factors:  (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).  Analyzing these factors here, the Court finds default judgment against both JA Dakis and Mr. Kalamaras is appropriate.  *See id.*

9

First, the record does not reveal any material issues of fact in dispute. Second, there has not been any substantial prejudice, for despite receiving proper service, JA Dakis and Mr. Kalamaras have simply not appeared. As such, they have not answered or otherwise responded to DK Trading's First Amended Complaint, though they have had ample time to do so. Third, the record shows the grounds for default are clearly established. Fourth, there is nothing before the Court to indicate that the default of either JA Dakis or Mr. Kalamaras was caused by a good faith mistake or excusable neglect. Fifth, the time that has passed since the entry of default, ameliorates the inherent harshness of a default judgment. Finally, the Court is unaware of any facts that would give the Court reason to set aside the default if either JA Dakis or Mr. Kalamaras challenged the judgment. The Court's analysis of these factors show they weigh substantially in favor of granting default judgment against the Defendants. Thus, a default judgment against JA Dakis and Mr. Kalamaras is appropriate.

### 2. The Court finds DK Trading's pleadings establish a sufficient basis on which to grant default judgment.

After concluding that a default judgment is appropriate under the circumstances, the Court must then determine if there is a sufficient basis in the pleadings to grant plaintiff a default judgment on its claims. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. As a result of their default, JA Dakis and Mr. Kalamaras are deemed to have admitted the well-plead factual allegations in DK Trading's First Amended Complaint. *See Frame*, 967 F.2d at 205 ("[C]onduct on which liability is based may be taken as true as a consequence of the default."). In determining whether the pleadings establish

10

sufficient basis for default judgment, the Court analyzed the First Amended Complaint under the pleading standard of Federal Rule of Civil Procedure 8(a)(2). *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (instructing that, in determining whether a pleading is "well-pleaded" or "sufficient" for purposes of default judgment, the court "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint").

### a. The Court finds DK Trading's pleadings establish a sufficient basis to grant its breach of contract claim.

The Court finds that DK Trading's Amended Complaint establishes a sufficient basis to support a default judgment on its breach of contract claim against both JA Dakis and Mr. Kalamaras. The Parties' Payment Agreement indicates Texas law would govern the interpretation and enforcement of the contract. Doc. No. 10-2 at 3, ¶8. Under Texas law, the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, LLC*, 903 F.3d 493, 499–500 (5th Cir. 2018)(citation omitted).

DK Trading's well-pleaded complaint and supporting exhibits show the following: (1) JA Dakis and Mr. Kalamaras entered a written Payment Agreement under which the Defendants both agreed to pay $6,186,825.47 plus interest to DK Trading in exchange for DK Trading's temporary forbearance on collection; (2) DK Trading performed under the Payment Agreement by holding off on pursuing collection

11

while payments were being made; (3) JA Dakis and Mr. Kalamaras breached the Payment Agreement by failing to pay the agreed-upon amounts; and (4) as a result of Defendant's breach of the Payment Agreement, DK Trading suffered damage of nearly five million dollars of unpaid principal and interest. *See* Doc. No. 10 at 2-3, ¶¶5-10; *see also* Doc. No. 10-1; Doc. No. 10-2; Doc. No. 10-3. Accordingly, the Court finds DK Trading's pleadings and supporting exhibits establish a sufficient basis for default judgment on its breach of contract claim against both JA Dakis and Mr. Kalamaras.

### b. The Court finds DK Trading's pleadings establish a sufficient basis to grant its suit on a sworn account.

DK Trading also brings a second cause of action against JA Dakis for a suit on sworn account. Doc. No. 10. at 4, ¶¶18-22. The elements of a Texas common-law suit on sworn account are: "(1) there was a sale and delivery of the merchandise or performance of the services; (2) the amount of the account is just, that is, that the prices were charged in accordance with an agreement, or in the absence of an agreement, they are usual, customary, and reasonable prices for that merchandise or services; and (3) the amount is unpaid." *Coim USA Inc. v. Sjobrand Inc.,* 663 F.Supp.3d 684 (N.D. Tex., 2023)(Brown, J.) (citing *Noodlenet, LP v. Proctor & Gamble Distrib. LLC*, Civ. Action No. 3:08-CV-1121-K, 2008 WL 11349984, at *2 (N.D. Tex. Nov. 11, 2008) (Kinkeade, J.)).

DK Trading's well pleaded complaint and supporting exhibits assert that (1) JA Dakis purchased fuel from DK Trading on credit with DK Trading (fuel which the Payment Agreement confirms JA Dakis received); (2) DK Trading's refinery sold the

fuel to JA Dakis on credit (which DK Trading asserts was at usual, customary, and reasonable prices); and (3) that JA Dakis' account remains unpaid for nearly five million dollars (which is confirmed by the sworn account and corroborated by the Payment Agreement). *See* Doc. No. 10 at 2-6, ¶¶5-10, 18-22; *see also* Doc. No. 10-1; Doc. No. 10-2; Doc. No. 10-3. Accordingly, the Court finds DK Trading's pleadings and supporting exhibits establish a sufficient basis for default judgment on its suit on a sworn account against JA Dakis.

### D. DK Trading has established it is entitled to specific damages as well as its pre and post-judgment interest, reasonable attorney's fees and costs.

In moving for a default judgment on its claims against the JA Dakis and Mr. Kalamaras, DK Trading asks the Court to award the following damages: (1) actual contract damages of $4,899,530.23, on the basis of unpaid principal balance of $4,756,825.47 plus unpaid agreed 3% interest on the unpaid amount; (2) pre-judgment interest until the date of final judgment; (3) post-judgment interest on the total judgment accruing at the maximum rate allowed by law; (4) attorneys' fees of $21,666.20 and $827.80 of costs; and (5) all other relief at law or equity they are entitled to receive.

The Court may enter default judgment and award damages without conducting an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up). Here, the Court finds that the damages claimed

13

by DK Trading are a sum capable of mathematical calculation, and on the basis of DK Trading's First Amended Complaint, the Payment Agreement, its sworn statement of account, attorneys' fee affidavit and other supporting exhibits, the Court finds the record is sufficient to award damages without an evidentiary hearing.  Doc. No. 10-1 at 3, ¶3; Doc. No. 10-2 at 2, ¶1(b); Doc. No. 10-3 at 16; Doc. No. 16-6 at 2-4.

After careful review of the record, the Court awards DK Trading the following:

> 1. **The Court grants DK Trading $4,899,530.23 based on JA Dakis and Mr. Kalamaras's agreed but unpaid principal and interest.**

After review of the evidence in the record, including the well-plead facts in DK Trading' First Amended Complaint, the Payment Agreement and DK Trading' sworn statement of account and supporting records, the Court finds that DK Trading's damages from JA Dakis and Mr. Kalamaras breach total $4,899,530.23, which includes $4,756,825.47 of contracted but unpaid principal and $142,704.76 of contracted but unpaid interest (3% of the outstanding balance under the Payment Agreement).  Doc. No. 10-1 at 3, ¶3; Doc. No. 10-2 at 2, ¶1(b); Doc. No. 10-3 at 16.  Accordingly, the Court grants judgment to DK Trading and awards $4,899,530.23 against both JA Dakis and Mr. Kalamaras for their breach of contract on their Payment Agreement in failing to pay to DK Trading their agreed principal and interest.

Although DK Trading may not collect duplicative damage award under a second duplicative cause of action, as DK Trading has separately established it is entitled to judgment against JA Dakis for its failure to pay for the oil it purchased on account from

14

DK Trading, the Court grants a judgment of $4,899,530.23 to DK Trading for its suit on a sworn account against JA Dakis.

> **2. The Court grants DK Trading pre-judgment interest but defers determination of the allowable amount pending entry of final judgment, and submission of evidence to establish the Defendants' date of notice of the claim pursuant to Texas law.**

In diversity cases, pre-judgment interest on awarded damages is available when permitted under state law. *See Can Cap. Asset Serv., Inc. v. Whitaker Trucking, LLC*, Civ. Act. No. 9:19-CV-00071, 2020 WL 4724320 (E.D. Tex., 2020) (citing *Bos. Old Colony Ins. v. Tiner Assocs.,* 288 F.3d 222, 234 (5th Cir. 2002)). In Texas, the prejudgment interest rate for breach of contract cases is the same as the post-judgment interest rate. *Int'l Turbine Serv., Inc. v. VASP Braz. Airlines*, 278 F.3d 494, 500 (5th Cir. 2002). Under federal law, post-judgment interest is to be awarded based on the weekly average 1-year constant maturity yield, for the calendar week preceding the date of the judgment. 28 U.S.C. § 1961(a). Thus, in diversity cases such as this, pre-judgment interest is applied at the federal post-judgment rate. *Bos. Old Colony Ins.*, 288 F.3d at 234 (citing *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir.1991)).

In Texas, pre-judgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives notice of a claim, or (2) the date suit is filed. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (citing TEX. FIN. CODE § 304.104); *Ho & Huang Props., L.P. v. Parkway Dental Assoc., P.A.*, 529 S.W.3d 102 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Pre-judgment

interest stops accruing on the day preceding the date judgment is entered and is calculated as simple interest which does not compound.  TEX. FIN. CODE § 304.104.

Although DK Trading is entitled to pre-judgment interest based on the forgoing, the record before the Court does not clearly establish the pre-suit date upon which JA Dakis and Mr. Kalamaras received notice of this claim, by which pre-judgment interest is calculated, pursuant to TEX. FIN. CODE § 304.104.   Further, the calculation of pre-judgment interest cannot be determined until the Court enters final judgment, which the Court will defer to allow DK Trading to supplement the record relating to fees and costs, below.  Accordingly, the Court grants judgment to DK Trading for pre-judgment interest against JA Dakis and Mr. Kalamaras but will defer calculation of the specific award of pre-judgment interest, pending the Court's entry of final judgment.  Should DK Trading wish to supplement the record to establish the date that Defendants were noticed pursuant to § 304.104, it may do so within 21 days of the entry of this order.

### 3. The Court grants DK Trading an award of post-judgment interest at the statutory rate, to be determined upon final judgment.

"Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a).  *Meaux Surface Prot., Inc. v. Fogleman,* 607 F.3d 161, 173 (5th Cir. 2010).  Accordingly, DK Trading is entitled to award of post-judgment interest against JA Dakis and Mr. Kalamaras on all amounts unpaid under the judgment from the date of final judgment, until the date the judgment is fully paid, such interest is to be computed

16

daily and compounded annually at the applicable statutory rate as of the date of the entry of final judgment.  28 U.S.C. § 1961(a)-(b).

> **4.  The Court grants DK Trading reasonable and necessary attorneys' fees and taxable costs but defers the determination of a specific award and grants Plaintiff leave to supplement the record.**

As the prevailing party on a Texas breach of contract claim and suit on sworn account, DK Trading is entitled to recover its reasonable and necessary attorneys' fees. TEX. CIV. PRAC. & REM. CODE § 38.001(7)-(8); *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487-89 (Tex. 2019). In addition, there is "a strong presumption that the prevailing party will be awarded costs." *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985); 28 U.S.C. § 1920.  The Parties' own Payment Agreement further states that the "the court shall award attorneys fees and costs of the suit to the prevailing party" in any lawsuit brought to enforce the agreement.  Doc. 10-2 at 3-4.  Accordingly, the Court finds that DK Trading is entitled to an award of its reasonable and necessary attorneys' fees and its taxable costs.

However, the record before the Court is not sufficient to establish the  amount of DK Trading's reasonable and necessary fees and costs. "The documentation supporting a factual finding regarding the amount of attorney's fees must be sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (citing *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir. 1995)).

To determine the fees proper to award, the Court must first determine the "lodestar", which "is the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). Only after establishing the reasonable rate for the reasonable hours expended, may the Court evaluate further factors that might either increase or decrease the fee. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

To determine reasonable hours, district courts "customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable hours." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *Kellstrom*, 50 F.3d at 324). Further, the party seeking fees bears the burden of demonstrating that its "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Advarra Tech. Sols., Inc. v. N. Tex. Clinical Trials, LLC*, Civ. Action No. 4:22-CV-001049-O, 2023 WL 5167033 at *7 (N.D. Tex. June 6, 2023)(Ray, J.) *adopted*, Civil Action No. 4:22-CV-001049-O, 2023 WL 6217744 (N.D. Tex. Sept. 25, 2023)(O'Connor, J.)(reducing attorneys' requested rates to reasonable, usual, and customary levels).

The Court finds that DK Trading is entitled to recover its reasonable and necessary attorneys' fees and taxable costs, and the Court will defer entry of final judgment and allow DK Trading 21 days from the entry of this Order to supplement the record to evidence its reasonable and necessary attorneys' fees and costs.

## IV.    CONCLUSION

For the forgoing reasons, the Court **GRANTS** Plaintiff DK Trading & Supply, LLC.'s Motion for Default Judgment Against Defendants JA Dakis Capital, LLC d/b/a Global Oil Bunkering and Petros Kalamaras.  Plaintiff DK Trading & Supply, LLC. is awarded the following damages against Defendants JA Dakis Capital, LLC d/b/a Global Oil Bunkering and Petros Kalamaras:

(i)       $4,899,530.23 in actual damages;

(ii)      pre-judgment interest, in an amount to be determined;

(iii)     post-judgment interest, at the applicable statutory rate; and

(iv)      reasonable and necessary attorneys' fees and taxable costs, in an amount to be determined.

The Court finds that DK Trading is entitled to recover pre-judgment interest, as well as reasonable and necessary attorneys' fees and taxable costs, but the record does not contain all the evidence necessary for the Court to determine a proper award of each.

Accordingly, the Court will defer entry of final judgment and allow DK Trading

**21 days from the entry of this Order to supplement the record**, if it wishes to do

so.

**SO ORDERED**.

Signed March 19th, 2025.

ED KINKEADE
UNITED STATES DISTRICT JUDGE

20